AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of California

| United States of America | ) |
|---|---|
| v. | ) |
| Jose Lainez and Marlon Gustavo Valle-Acosta | ) Case No. 3:23-mj-71469 MAG |
| *Defendant(s)* | ) |

FILED
Sep 28 2023
Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of September 27, 2023 in the county of San Francisco in the Northern District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1) and (b)(1)(C) | Possession with Intent to Distribute Fentanyl; Aiding and Abetting |
| 18 U.S.C. 2 | Maximum penalties:<br>• Imprisonment: 20 years (21 U.S.C. § 841(b)(1)(C))<br>• Fine: $1 million (21 U.S.C. § 841(b)(1)(C))<br>• Supervised Release: Min. 3 years – Max. life (21 U.S.C. § 841(b)(1)(C))<br>• Special Assessment: $100 (18 U.S.C. § 3013(a)(2)(A))<br>• Forfeiture: 21 U.S.C. § 853(a) \| Deportation \| Denial of Federal Benefits |

This criminal complaint is based on these facts:

See attached affidavit of FBI Special Agent Katherine Barclay

☑ Continued on the attached sheet.

/s/ Katherine Barclay, FBI Special Agent
*Complainant's signature*

Approved as to form /s/ AUSA Patrick O'Brien
AUSA Patrick O'Brien

Katherine Barclay, FBI Special Agent
*Printed name and title*

Sworn to before me by telephone.

Date: September 27, 2023

*Judge's signature*

City and state: San Francisco, CA

Hon. Peter Kang, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR AN ARREST WARRANT AND CRIMINAL COMPLAINT

I, Katherine Barclay, a Special Agent with the Federal Bureau of Investigation, having been duly sworn, hereby depose and state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for an arrest warrant and criminal complaint charging JOSE LAINEZ and MARLON GUSTAVO VALLE-ACOSTA with possession with intent to distribute Fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2 (aiding and abetting), occurring on or about September 27, 2023, in San Francisco, California, in the Northern District of California.

## SOURCES OF INFORMATION

2. The facts in this affidavit come from my personal observations, my training and experience, information from records and databases, and information obtained from other agents, officers, and witnesses. Where statements made by other individuals (including other Special Agents and law enforcement officers) are referenced in this Affidavit, such statements are described in sum and substance and in relevant part. Similarly, where information contained in reports and other documents or records is referenced in this Affidavit, such information is also described in sum and substance and in relevant part.

3. Because this Affidavit is submitted for the limited purpose of establishing probable cause for a criminal complaint and arrest warrant, I have not included every fact known to me about this case. Rather, I have set forth only the facts that I believe are necessary to support probable cause for a criminal complaint and arrest warrant. My understanding of the facts and circumstances of the case may evolve as the investigation continues.

## AFFIANT BACKGROUND

4. I am a Special Agent with the Bureau of Federal Bureau of Investigation since August 2016. I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 3051.

5. During my training at the FBI Academy, Quantico, Virginia, I received training in a variety of investigative and legal matters, including the topics of Fourth Amendment searches, the drafting of search warrant affidavits, and probable cause. The academy covered all aspects of FBI led investigations, including but not limited to physical surveillance, constitutional rights, the execution of search warrants, interview techniques, and working with confidential sources.

6. Since becoming a Special Agent, I have investigated public corruption, civil rights, and cyber crimes. I have also participated in drug and gang investigations through supporting Title III wire surveillance and participating in search and arrest operations. As a result, I have encountered and become familiar with the various tools, methods, trends, paraphernalia, and related articles used by traffickers and trafficking organizations in their efforts to import, conceal, manufacture, and distribute controlled substances.

7. Based on my training and experience, as well as conversations I have had with experienced law enforcement officers, I have become familiar with the practices of narcotics traffickers. Specifically, I am familiar with methods that traffickers use to smuggle, safeguard, transport, and distribute narcotics, and to collect and launder the proceeds of drug trafficking. These methods include the use of automobiles, wireless communications devices (such as cellular phones), lookouts and counter surveillance, false or fictitious identities, coded language, and/or encrypted communications. I know that many drug traffickers use cell phones to facilitate their drug dealing activities, including to arrange the collection, transportation, and distribution of narcotics. I also know that many drug traffickers will meet in person at pre-arranged locations to conduct meetings and transactions in furtherance of their drug trafficking activities. Many drug dealers utilize such practices to commit crimes while avoiding detection by law

enforcement.

8. I have also had discussions with other law enforcement officers about the packaging and preparation of narcotics, the methods of operation, and security measures that are often employed by narcotics traffickers. I have examined documentation of various methods in which fentanyl and methamphetamine and other illicit drugs are smuggled, transported, possessed with intent to distribute, and distributed.

9. I am familiar with the facts and circumstances of the investigation through my participation in it based on several investigative techniques, including discussions with agents and officers from other law enforcement agencies, and review of records and reports relating to the investigation. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the statement is not being recounted verbatim but instead only in substance and in part. Facts not set forth herein, or in any attached exhibits, are not being relied on in reaching my conclusion that the requested order should be issued. Nor do I request that this Court rely on any facts not set forth herein in reviewing this application.

## APPLICABLE STATUTE

10. **Possession of Controlled Substance with Intent to Distribute**. Under Title 21, United States Code, Section 841(a)(1) and (b)(1)(C), it is unlawful for any person to knowingly or intentionally possess with intent to distribute a federally controlled substance. Under 21 C.F.R. § 1308.12, Fentanyl is a Schedule II controlled substance.

## STATEMENT OF PROBABLE CAUSE

11. On September 27, 2023, LAINEZ and VALLE-ACOSTA were arrested by DEA Agents near the intersection of Van Ness Avenue and Willow Street, in San Francisco, California, in the Northern District of California. This area is near the Tenderloin neighborhood in San Francisco, which I know based on my training and experience and my conversations with other law enforcement officers is an area known for significant amounts of drug trafficking activity. Based on the facts described below, I have probable cause to believe that LAINEZ and

VALLE-ACOSTA violated 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and 18 U.S.C. § 2 (aiding and abetting) based on their possession with intent to distribute Fentanyl.

12. Based on my training and experience, as well as my observations on today's date and my conversations with law enforcement officers involved in this operation, it is common for drug traffickers in the Tenderloin to work with one or more other individuals who assist with identifying customers, holding drugs, and looking out for law enforcement.

13. Between the hours of 1000 and 1330 on September 27, 2023, law enforcement personnel observed and recorded a male, later identified as LAINEZ, pacing and conducting and facilitating hand-to-hand drug transactions around the intersection of Eddy Street and Van Ness Avenue, and around the intersection of Willow Street and Van Ness Avenue. LAINEZ was wearing a dark blue hooded Puffer coat with a tan hat. While observing LAINEZ, he constantly surveyed his surroundings as if he were looking for, or looking out for, someone. Based on the training and experience of the law enforcement personnel present at that time and who observed LAINEZ, and LAINEZ's location in an area well-known by law enforcement for drug trafficking activity, the type of hyper vigilance displayed by LAINEZ was consistent with behavior commonly displayed by narcotics dealers that are on the constant lookout for potential customers, rival drug dealers, and police presence.

14. LAINEZ was observed participating in what appeared to be multiple hand-to-hand transactions. In a transaction that occurred at approximately 1043 hours, LAINEZ was seen handing a small unknown object to an unknown subject who was sitting behind a tent near the intersection of Eddy Street and Van Ness Avenue. A customer then approached LAINEZ who responded to the customer. The customer then approached the unknown subject, who handed a small unknown object to the customer. Based on conversations with other law enforcement officers and my training and experience, the described conduct is consistent with LAINEZ providing a controlled substance.

15. I observed at least two additional transactions of a similar nature involving LAINEZ. At approximately 1310, LAINEZ was seen facilitating a hand-to-hand deal with VALLE-ACOSTA near the intersection of Van Ness Avenue and Willow Street. On this occasion, law enforcement observed LAINEZ escort an unknown female customer onto Willow Street from Van Ness Avenue and approach VALLE-ACOSTA. During this transaction, LAINEZ and VALLE-ACOSTA stood together. The buyer handed VALLE-ACOSTA what appeared to be cash currency and VALLE-ACOSTA handed a small unknown object to the buyer. Based on conversations with other law enforcement officers and my training and experience, the described conduct is consistent with VALLE-ACOSTA and LAINEZ providing a controlled substance.

16. In another transaction similar to those described above, at approximately 1322, a customer approached LAINEZ who sat near Van Ness Avenue and Willow Street. LAINEZ directed the customer toward VALLE-ACOSTA, who stood along Willow Street. The customer walked close to VALLE-ACOSTA. Just before approaching the buyer, VALLE-ACOSTA manipulated a white substance in his hands. VALLE-ACOSTA then handed the customer a small unknown object. The customer then departed the vicinity. Based on conversations with other law enforcement officers and my training and experience, the described conduct is consistent with VALLE-COSTA and LAINEZ providing a controlled substance.

17. Law enforcement arrested LAINEZ for the on-viewed distribution of suspected controlled substances. Upon law enforcement's arrest of LAINEZ, he attempted to run away on Willow Street in the opposite direction of Van Ness Avenue. Law enforcement searched LAINEZ incident to arrest and recovered the following evidence from LAINEZ's person:

    a. Suspected Fentanyl in plastic baggies, 41.5 grams (net).

18. The suspected Fentanyl seized from LAINEZ's person later tested presumptive positive for Fentanyl utilizing a TruNarc testing device. An additional 40.7 grams of an

unknown white substance tested presumptive inconclusive utilizing a TruNarc testing device. Pictures of the TruNarc results are attached to this affidavit in Attachment 1.

19. Law enforcement also arrested VALLE-ACOSTA at the same time they arrested LAINEZ for the on-viewed distribution of suspected controlled substances. Law enforcement searched VALLE-ACOSTA incident to arrest and recovered the following evidence from VALLE-ACOSTA's person:

    a. Suspected Fentanyl in plastic baggies, 74.7 grams (net).

20. The suspected Fentanyl seized from VALLE-ACOSTA's person later tested presumptive positive for Fentanyl utilizing a TruNarc testing device. Pictures of the TruNarc results are attached to this affidavit in Attachment 2.

21. The Fentanyl, packaged into several clear baggies possessed by LAINEZ and VALLE-ACOSTA, is further evidence, based on my training and experience, that LAINEZ and VALLE-ACOSTA intended to distribute the Fentanyl to others. The location of the arrest near San Francisco's Tenderloin District, an area known for a high volume of drug sales activity, and the observed hand-to-hand transactions and coordination between LAINEZ and VALLE-ACOSTA described above, further supports this conclusion.

//
//
//
//
//
//
//
//
//
//

## CONCLUSION

22. Based on my training and experience, and the facts and circumstances set forth above, I believe probable cause exists to believe that on September 27, 2023, in the Northern District of California, LAINEZ and VALLE-ACOSTA possessed with the intent to distribute Fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2 (aiding and abetting). Accordingly, I respectfully request that the Court issue a criminal complaint and a warrant for their arrest.

*/s/ Katherine Barclay*
SPECIAL AGENT KATHERINE BARCLAY
Federal Bureau of Investigation

Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d) on this 27th day of September 2023.

_____
HONORABLE PETER H. KANG
United States Magistrate Judge

**ATTACHMENT 1**





ATTACHMENT 2



