UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. CR 23-00334 WHA |
| v. | *Related to* CR 23-00346 WHA-2 |
| JOSE ALFREDO LAINEZ BANEGAS, and MARLON GUSTAVO VALLE-ACOSTA, | **MEMORANDUM OPINION RE GUILTY PLEAS INVOLVING FENTANYL SALES** |
| Defendants. | |

Our excellent United States Attorney's Office has implemented a new program aimed at disrupting the fentanyl crisis in the San Francisco Tenderloin. This program involves "quick dispositions" for those defendants prosecuted for street-level open-air dealing where they have a "limited criminal history" and no evident role in the larger transportation or importation of drugs. The disposition allows a plea deal for time-served (usually a matter of days) with a three-year stay-away order from the Tenderloin as part of supervised release, all to be implemented at the first appearance before the district court.

I certainly agree there is a severe fentanyl crisis in the Tenderloin (and San Francisco at large). I disagree, however, that the normal sentencing process and preparation of a presentence report (PSR) should be discarded in Tenderloin cases. Street-level fentanyl dealers may work at the lowest rung in the drug trafficking organizations, but they are still an essential part of those organizations, and they are the ones making direct sales of fentanyl to victims. If such extreme leniency is to be extended to fentanyl dealers, it should only be after we have the benefit of a presentence report and the normal sentencing process. This memorandum opinion explains why.

Rule 32 requires a district judge to require preparation of a presentence report in all cases except where the judge expressly finds that he or she already has sufficient and reliable information to carry out sentencing. Proceeding to sentencing at the first appearance without a PSR is the rare exception, not the norm. A PSR serves many important purposes including enabling the court to meaningfully exercise its sentencing authority under 18 U.S.C § 3553. It identifies the applicable sentencing guidelines, offense level, criminal history, and any other factors relevant to the appropriate sentence or as a basis for departing from the sentencing range. The PSR covers the defendant's personal and family history and characteristics. This information assesses any drug addiction, financial, social, psychological, and medical impacts and can additionally include "any other information that the court requires." F.R.Cr.P. 32(c)–(f). Our PSRs also provide data on how other judges nationwide have sentenced offenders in similar circumstances. Defendants have the right to be interviewed to improve the scope and accuracy of the information.

The PSR may further explain the correctional programs in and out of prison that can aid in rehabilitation. In recent years, compassionate release motions have demonstrated the scope of programs for rehabilitation in the Bureau of Prisons. Those motions have regularly illuminated the benefits from the prison programs, providing dozens of certificates from the various programs and classes as proof of reform of the inmate.

One of the goals of sentencing under Section 3553 is rehabilitation. In deciding on a course for rehabilitation, we should keep in mind that an intervention is almost always needed to break the cycle. If an addict or drug dealer is released with no intervention, he will likely return to his old ways of using or selling drugs, for this is what he knows. This cycle can be broken, usually only by an intervention, which can come in various forms, such as a residential drug treatment program, a custodial sentence, or some other correctional treatment. The PSR helps assess ways to break the cycle. It is likewise useful to the Bureau of Prisons in offering correctional programs to the offender. Since the First Step Act, undocumented migrants now qualify for the benefit of Bureau programs.

At our first hearing, the defense attorney (for defendant Banegas) stated, "What I do know is that every other judge in the building is accepting these deals for clients in this situation," meaning summary sentencing to time-served at the first appearance (RT 25:16–17).  This was an overstatement.  After the hearing, I asked the judge in the chambers next door about this statement; he stated not only was this statement not true as to him, but he had not even been presented with such a case yet.  Surely this was an innocent error by defense counsel, but it underscores the need for accurate information for sentencing, the type of reliable information provided by a presentence report.  To repeat, our PSRs will lay out the sentencings nationwide in similar cases.

The government states that if the offender recidivates, then a Form 12 can issue and the offender can then be sent to prison.  This presupposes, however, that the new offense will be detected and that the offender will be arrested, which does not always happen or happens only after much harm has been done.  And, the sentencing ranges will be — even if a Form 12 is proven — greatly restricted by comparison to a sentencing range following the original guilty plea.

The fast-track program, moreover, gives short shrift to victims and their opportunity to be heard.  The Criminal Victim Rights Act allows a near absolute right to criminal victims to be notified, attend, and be heard at sentencing hearings.  A "crime victim" is defined in the Act as "a person directly and proximately harmed as a result of the commission of a federal offense."  In the case of a crime victim who is deceased, "the legal guardians of the crime victim or the representatives of [their] estate, family members, or any other persons appointed as suitable by the court" may assume the crime victim's rights under the Act.  18 U.S.C. § 3771(e)(2).  Sadly, there have been 563 overdose deaths in San Francisco so far this year, the vast majority having been fentanyl deaths, occurring at an average of two per day.  On numerous past occasions, the government itself has pointed out the devastation of fentanyl in advocating for substantial custodial sentences for fentanyl defendants.  Some examples of the government's recent statements are provided below:

3

> Fentanyl — even in small quantities — is the most dangerous drug to afflict the community in decades. The drug typically is dosed in micrograms (millionths of a gram). A dose of 2,000 micrograms — just 2 milligrams (0.002 g) — is usually fatal to those without opioid tolerance. Even the small amount contained in the M30 pills that [defendant] sold his friend can be — and in this case was, lethal. To appreciate just how little a fatal dose of fentanyl is, on its website, the DEA has the following depiction of what 2 milligrams looks like:



*United States v. Pascoe*, 3:22-cr-00025 WHA, Dkt. No. 75 (Sentencing Memorandum by USA, Aug. 10, 2022) (citations omitted).

> While an ounce of fentanyl might not sound like a large amount, the potency of fentanyl shows that it is a significant quantity. According to the DEA case agent, two milligrams of fentanyl is enough to cause an overdose death. One ounce of fentanyl, therefore, is more than 28,000 potentially lethal doses. That means that the defendant intended to distribute more than 56,000 potentially deadly doses of fentanyl into our community order [sic] to make a significant profit.

*United States v. Brian Rabbitt,* 3:20-cr-00335 WHA, Dkt. No. 48 (Sentencing Memorandum by USA, Sept. 28, 2021).

    The dead are no longer able to say who sold them the fentanyl and, in that sense, it is hard to pin a given death on any given dealer. But sometimes it can be done, and every reasonable effort should be made to connect the dots and to give the families of fentanyl victims their day in court. Very recently, the Drug Enforcement Agency has held or will be holding regional "Family Summits" for those who have lost loved ones to drug overdoses, including in our area. Before deciding on a sentence, I would like to hear how these fentanyl deaths have affected their families. Summary sentencing on a fast track makes this impossible. Of course, deaths are only the most visible evil of fentanyl. Addiction is also ruinous.

4

For those defendants receiving the benefit of this program who are undocumented, the new plan is they will be turned over to ICE and face probable deportation. Deportation, however, is not guaranteed. Once in ICE custody, the offender will be free to oppose deportation and to seek administrative release into the community pending completion of the proceedings. A prime argument then will surely be that the offender only got a time-served sentence and that, once on administrative release into the community, he or she will still be under the supervision of federal probation. If administrative release is granted, we will be back to square one, meaning that the offender, having received no intervention, will likely return to the street to sell fentanyl. At sentencing, in cases assigned to me, counsel shall please address the extent of the risk of this scenario.

Section 3553 calls out deterrence of crime as a sentencing factor. This includes deterrence of future crimes by the offender but also deterrence of future crimes by others. At sentencing (with the benefit of a PSR) counsel shall please address the following questions. Will lenient dispositions with no prison time encourage fentanyl crimes, rather than deter them? Will the lenient program in question serve as an open invitation to come to San Francisco to sell drugs, for even if caught, the worst that is likely to happen will be a few days in jail or a free trip home? Why has San Francisco attracted so many fentanyl dealers? What was the specific scenario by which defendant came to sell fentanyl in San Francisco, and will leniency encourage others to follow a similar path? For the sake of deterrence, should prison time be on the table, not automatically off the table?

The United States Attorney's Office is free to use its prosecutorial discretion in any way it deems fit, a power upon which this memorandum does not seek to encroach. But each district judge must likewise exercise her or his own judgment and informed discretion in carrying out sentencing. The extent to which a lenient sentence is warranted in fentanyl cases before me will, almost always, be decided with the benefit of a complete sentencing record.

Dated: October 23, 2023.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE